THERESE MURPHY, as Administratrix, etc., Appellant, *v.*
FRANK K. HAYES et al., Respondents.

In an action to recover damages for alleged negligence, causing the death
of M., plaintiff's intestate, these facts appeared: M. was in the employ
of a safe company engaged in moving a safe into defendants' building.
The safe was carried up in a freight elevator to a little above the floor
where it was to be placed. Other employees of the company placed
pieces of iron under the front of the elevator car to sustain it, which
was then lowered upon them. Said employees then went into the car,
the rear portion of which began to sag down; they called out to raise
the car up. The janitor of the building thereupon called down the
elevator shaft to the engineer to "raise her a turn." The car was raised
up even with the floor, when the janitor again called down the shaft to
"stop and hold the pressure on and keep her in her place." Said
employees then began to push the safe out of the car; when about half
out the car rose, tipping the safe over, and M., who was in front of it,
was killed. *Held*, that the complaint was properly dismissed; that
defendants were chargeable with no duty with reference to the removal
of the safe from the elevator ; that the negligence was that of M.'s
co-employees in attempting to remove the safe with the power on with-
out notifying the engineer below or directing him to reduce the power
in case the car should commence to rise.

(Argued March 7, 1895; decided March 19, 1895.)

APPEAL from judgment of the General Term of the
Supreme Court in the first judicial department, entered upon
an order made April 14, 1894, which affirmed a judgment in
favor of defendants entered upon an order of the court on
trial at Circuit dismissing the complaint.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*G. Washbourne Smith* for appellant. The defendants
were guilty of negligence in starting the elevator and tipping
the safe over, while the deceased and the rest of Marvin's
men were removing it from the car. (*Coughtry* v. *G. W.
Co.*, 56 N. Y. 124; Ray's Per. Neg. 18, 19; *Ackert* v.
*Lansing*, 59 N. Y. 646; *Swords* v. *Edgar*, Id. 28; *Bennett*

v. *R. R. Co.*, 102 U. S. 577 ; *Elliott* v. *Pray*, 10 Allen, 378 ; *Ritterman* v. *Ropes*, 19 J. & S. 25 ; *Tousey* v. *Roberts*, 21 id. 446 ; *Scott* v. *L. D. Co.*, 3 H. & C. 596 ; *Gerlach* v. *Edelmeyer*, 15 J. & S. 292 ; *Briggs* v. *Oliver*, 4 H. & C. 403 ; *Lyons* v. *Rosenthal*, 11 Hun, 46 ; *Byrne* v. *Boadle*, 2 H. & C. 722 ; *Kearney* v. *L. & C. R. Co.*, L. R. [6 Q. B.] 760 ; *Thomas* v. *W. U. T. Co.*, 100 Mass. 156 ; *Lowery* v. *M. R. Co.*, 99 N. Y. 161 ; *Mullen* v. *St. John*, 57 id. 567 ; S. & R. on Neg. [4th ed.] §§ 59, 60 ; *Stokes* v. *Saltonstall*, 13 Pet. 181.)   On the question, whether the plaintiff's intestate was free from contributory negligence, the case was clearly one for the jury. (*Benzing* v. *Steinway*, 100 N. Y. 551 ; *Stringham* v. *Stewart*, 100 id. 516 ; *Doyle* v. *Baird*, 15 Daly, 287 ; *Murtaugh* v. *N. Y. C. R. R. Co.*, 49 Hun, 460; *Davidson* v. *Cornell*, 132 N. Y. 228; *Galvin* v. *Mayor, etc.*, 112 id. 223 ; *Hoag* v. *R. R. Co.*, 111 id. 199 ; *Stackus* v. *N. Y. C. R. R. Co.*, 79 id. 466 ; *Thurber* v. *H. R. R. Co.*, 60 id. 326 ; *Dervin* v. *Herrman*, 23 J. & S. 274.) The plaintiff had the right to prove what appliances the owners of other high buildings in the city of New York and vicinity used to keep their elevators stationary while men were removing heavy safes from them.   (*Hegeman* v. *R. R. Co.*, 13 id. 1 ; *W. R. R. Co.* v. *McDade*, 135 U. S. 554.)   The court erred in sustaining the defendants' objection to questions put to the expert witness Smith.   (*Wallace* v. *C. V. R. R. Co.*, 138 N. Y. 302 ; *Galvin* v. *Mayor, etc.*, 112 id. 226 ; *Hart* v. *H. R. B. Co.*, 84 id. 60 ; *Wottrich* v. *Freeman*, 71 id. 601 ; *Tinney* v. *N. J. S. Co.*, 5 Lans. 509 ; *Nadau* v. *W. R. L. Co.*, 76 Wis. 120 ; *Crocker* v. *Ins. Co.*, 8 Cush. 79.)

*Charles C. Nadal* and *Thomas S. Moore* for respondents. The learned trial judge was correct in his ruling dismissing the complaint. (*Reiss* v. *N. Y. S. Co.*, 128 N. Y. 103 ; *Cosulich* v. *S. O. Co.*, 122 id. 118 ; *Dobbins* v. *Brown*, 119 id. 188 ; *Losee* v. *Buchanan*, 51 id. 476 ; *Heaney* v. *L. I. R. R. Co.*, 112 id. 122 ; *Riordan* v. *S. S. Co.*, 124 id. 655 ; *Ferguson* v. *Hubbell*, 97 id. 507 ; *Van Wycklen* v. *City of Brooklyn*, 118 id. 424 ; *Roberts* v. *N. Y. E. R. R. Co.*, 128 id. 455.)

HAIGHT, J.   This action was brought to recover damages for the death of Patrick Murphy, the plaintiff's intestate, caused, as alleged, by the negligence of the defendants.

Patrick Murphy, with several others, was in the employ of the Marvin Safe Company, engaged in moving a safe weighing nine thousand three hundred pounds into the defendants' building on Maiden lane, in the city of New York, for one of the defendants' tenants therein.   There were two elevators in the building opposite each other on the main hall, one of which was constructed for carrying heavy freight as well as passengers.   The safe was run into the hall on the first floor and placed upon the freight elevator.   The engineer of the building was then given an order to go ahead, and thereupon he applied the power and raised the car containing the safe to the seventh floor of the building, where it was to be removed and placed in the tenant's office.   After the elevator had arrived at the floor of its destination the servants of the Marvin Safe Company placed two iron shoes under the front edge of the car.   They consisted of two broad pieces of iron, which extended beneath the floor of the car with a double angle which projected out into the hallway.   The elevator was then lowered upon the shoes, and two of the employees of the Marvin Safe Company went into the car behind the safe to assist in pushing it out into the hall.   As they entered the car the rear portion thereof commenced to sag down, and they called out to raise the car up.   A janitor in the defendants' employ, standing by, hallooed down the elevator shaft to the engineer to "raise her a turn; give her a turn."   Thereupon the car was raised up even with the floor.   He then shouted down the shaft: "Stop and hold the pressure on and keep her in her place."   The car then remaining steady, the servants of the safe company took hold of the safe and pushed it out. As soon as they got it about half way out on to the floor of the hall the elevator commenced to raise, and rose gradually for the space of about three feet, tipping the safe over on to its face in the hall.   The plaintiff's intestate, being in front of

the safe, was thrown over into the opposite elevator shaft, fell and was killed.

We think there can be no reasonable doubt as to the cause of the accident. The inferences to be drawn from the facts would have justified the jury in finding that the car was held in position, even with the floor of the building, through the power maintained upon the elevator by the engineer in the basement below, and as soon as the elevater was relieved in part of the great weight of the safe the car commenced to rise, because of such power, causing the safe to tip forward.

Who was at fault? Was it the defendants' engineer? Manifestly not. He was in the basement below operating the elevator according to orders received from above. He could not see or know what they were doing with the safe, or the manner in which they were removing it from the car of the elevator. He apparently obeyed the orders given him ; and we discover nothing in his acts that can properly be made the subject of criticism.

Was it the janitor ? He was charged with no duty with reference to the moving of the safe. So far as appears he was but a volunteer. When the men inside of the car called out to "raise her up," after finding that the rear of the car was sagging down, he shouted their orders down through the elevator shaft to the engineer. It is true that, after the car was again raised even with the floor, he again shouted down to the engineer to keep the pressure on and hold the car in place. But this was done in a loud voice, in the presence of the servants of the safe company, including Murphy, and no objection was made thereto. The order was evidently proper. It had then been demonstrated that the shoes placed under the floor of the front of the car were insufficient to hold it in place, and power from beneath was required in order to keep it from sagging down in the rear. The janitor was not shown to have had experience or knowledge in the moving of safes, or to have taken any other responsibility, or given other orders with reference thereto.

Were the defendants negligent ? There is no pretense that

the elevator was not of the best construction, or that it did not do its work properly. The only thing suggested is that they did not have a man upon the elevator having hold of the rope so as to shut off the power as the safe was removed from the elevator. But they were chargeable with no duty with reference to the removal of the safe. They simply furnished the elevator operated by the engineer, with which to enable the Marvin Safe Company to effect the hoisting of the safe. The capacity of the elevator was from four to five tons. The weight of the safe, as we have seen, was upwards of four tons and a half, nearly equal to the entire capacity of the elevator. The elevator could be operated by the engineer properly, under orders from above, and, under the circumstances, it may not have been deemed prudent to burden the elevator with the weight of an additional man. We consequently see no ground for charging the defendants with negligence.

Did the accident result in consequence of the negligence of the servants of the safe company? Those servants were engaged in the removal of the safe. They were accompanied by the foreman of the gang and the general foreman of the company, men who had had many years of experience in the moving of safes in the cities of New York, Brooklyn and Jersey City, and the taking of them up in elevators in high buildings. They were fully aware of the difficulties and dangers attending the handling of safes of great weight, and understood the nature and character of the appliances necessary to be made use of in performing such work. They knew that the shoes had proved insufficient to hold the car in place, and that they had placed no skid or other appliance across the elevator shaft to hold the car in position. They knew that the elevator car was maintained in position upon the seventh floor of the building with this safe upon it, through power applied by the engineer in the basement below. They knew that there was no man upon the car having hold of the rope so as to reduce the power as the safe was removed. Yet knowing all this, they attempted to remove the safe from the elevator with the power on, without giving notice to the

engineer below, or directing him to reduce the power in case the elevator should commence to rise. In this, it appears to us, they were negligent, and such negligence caused the death of Murphy. They were his co-servants and co-laborers, he participating with them in negligently doing the work they had in charge.

It follows that the non-suit was proper, and that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.